UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  15-CV-21790-LENARD/O'SULLIVAN

HARVEY R. JOHNSON,

     Plaintiff,

v.

JASON COOKE, officer, et al.,

     Defendants.

_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court to reconsider the Defendants' Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment (DE# 73, 7/25/17) pursuant to the Eleventh Circuit's Mandate (DE# 124, 9/5/19).  This matter was referred to Chief United States Magistrate Judge John J. O'Sullivan by the Honorable Joan A. Lenard, United States District Court Judge for the Southern District of Florida pursuant to 28 U.S.C. § 636(b) (DE# 130, 10/14/2020) and consistent with the Eleventh Circuit's Mandate (DE# 124, 9/5/19).

Having carefully considered the Defendants' Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment (DE# 73, 7/25/17), , the Plaintiff's Response to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (DE# 81-1, 11/8/17), the Declaration of Harvey R. Johnson (DE# 92, 11/15/17), the plaintiff's Motion to Take Judicial Notice (DE# 126, 5/4/20), the plaintiff's Motion to Supplement (DE# 127, 5/5/20), the plaintiff's Response to Court's Scheduling Order (DE# 132, 10/29/20), the Defendants' Memorandum of Law (DE# 135, 12/11/20), the court file, and applicable law, the undersigned respectfully

recommends that the Defendants' Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment (DE# 73, 7/25/17) be GRANTED in accordance with the following Report and Recommendation.

## INTRODUCTION

Pursuant to the Eleventh's Circuit's Mandate, on remand, this Court must answer the question of whether Congress or the Court should decide whether Bivens[1] should be extended to the plaintiff's First Amendment retaliation claims against fifteen defendants. Mandate (DE# 124, 9/5/19). The plaintiff claims that prison staff retaliated against him in response to his filing grievances against them. The plaintiff alleges that the following actions or inaction constituted retaliation: his placement in the Solitary Housing Unit ("SHU"), an officer's refusal to assist the plaintiff's request to obtain his blood pressure medicine, and his transfer to another prison. The defendants argue that the Court should not extend Bivens and should dismiss the plaintiff's First Amendment retaliation claims.

The crux of the defendants' motion is that the Supreme Court precedent has only extended Bivens in three contexts: 1) an arrest of an individual in his home without a warrant in violation of the Fourth Amendment; 2) gender discrimination by a male congressman in terminating his female secretary in violation of the Fifth Amendment; and 3) depriving an inmate of asthma medication that resulted in his death constituting cruel and unusual punishment in violation of the Eighth Amendment. The defendants maintain that Congress is in a better position to authorize a damages remedy for an

---

[1]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

inmate rather than the Judiciary and that "special factors" counsel hesitation against extending Bivens in the context of the plaintiff's First Amendment retaliation claims.  The defendants ask the Court to dismiss all of the plaintiff's First Amendment retaliation claims.

The plaintiff argues that Abbasi and other Supreme Court precedents do not preclude First Amendment retaliation claims.  He asserts that the Supreme Court cases that addressed the First Amendment are factually distinguishable.  Additionally, the plaintiff argues that he has no alternative remedy. The plaintiff asks that the Court deny the defendants' motion to dismiss or motion for summary judgment.

In its Mandate, the Eleventh Circuit found that Supreme Court precedent clearly disfavors expanding Bivens and requires courts to engage in a two-part inquiry before doing so.  Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017). First, the Court must determine whether the claim presents a "new Bivens context," and if so, second, the Court must determine whether there are "special factors counseling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S. Ct. at 1857 (quoting Bivens, 403 U.S. at 396, 91 S. Ct. 1999).

Pursuant to the Mandate, the Eleventh Circuit completed the first step of the inquiry and held that the plaintiff's First Amendment retaliation claims "represent a new Bivens context." Mandate at 10 (DE# 124, 9/5/19).  The Eleventh Circuit remanded this matter to this Court "to reconsider its ruling on the Defendants' motion to dismiss or for motion for summary judgment in light of Ziglar v. Abbasi, 137 S. Ct. 1843 (2017)." Id.

Thus, the undersigned will focus the analysis on the second step of the inquiry, namely the "special factors" analysis consistent with Abbasi.  The undersigned has

considered the Court filings regarding the defendants' underlying motion to dismiss or alternative, motion for summary judgment, as well as the post-Mandate briefings filed by the parties, and the Court file.

## PROCEDURAL BACKGROUND

The plaintiff filed his fifty-two count civil rights complaint pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). See Complaint under the Civil Rights Act, 42 U.S.C. § 1983 (DE# 1, 5/12/15).[2] The civil rights complaint contains allegations that pertain to events that occurred at the Federal Correction Institution in Miami ("FCI Miami") and the Federal Correction Institution Coleman Low ("Coleman Low").  In his Complaint, the plaintiff alleged that eighty-two individual defendants, including officers, pharmacists, administrators, attorneys, and others in their official and individual capacities, retaliated against him for filing grievances complaining about alleged staff misconduct in violation of his First Amendment right.

The Court screened the *pro se* Complaint.  See Report of Magistrate Judge at 1 (DE# 10, 6/1/15); **Supplemental** Report of Magistrate Judge (DE# 16, 7/31/15) (emphasis in original). The Magistrate Judge evaluated the claims and issued the supplemental report that recommended dismissing nearly all claims and defendants for various reasons, with leave to file an amended complaint.

On July 17, 2016, the Court adopted as modified and supplemented the Report

---

[2]Although the Complaint states that it is an action under 42 U.S.C. § 1983, the action is under Bivens because the plaintiff is a federal inmate who is alleging constitutional violations by federal, not state, employees.

of Magistrate Judge Patrick A. White. See Order Adopting, Supplementing, and

Modifying Supplemental Report of Magistrate Judge (D.E. 16) and Dismissing in Part

Plaintiff's *Bivens* Complaint (D.E. 1) with Leave to Amend. (DE# 22, 7/18/16). The Court

accepted most of the Magistrate Judge's recommendations but allowed the plaintiff to

proceed on a retaliatory transfer claim against multiple defendants. Id. at 34. The Court

allowed the plaintiff's claims for retaliation against the defendants Andrews, Burden,

Cooke, Freehill, Loftus, Nicholson, Oramas, and Roy in their individual capacities

identified on page 14 of the Judge White's Report to proceed.  The Court allowed the

plaintiff's claim for retaliation against the defendants Roy, Burden, Andrews, Wilson,

Nicholson, Garcia, Donaldson, Oramas, Barnes, Posada, Hanna, and Bearden, stated

in Paragraph 529 of the Complaint to proceed.  Id. at 34. Fifteen of the eighty-two

defendants named in the complaint survived the Court's pre-service screening of the

Complaint. Id. The Court also granted the plaintiff leave to file an amended complaint

within thirty days and extended the deadline to October 27, 2016.  The plaintiff did not

file an amended complaint.

On July 25, 2017, the defendants filed the Defendants' Motion to Dismiss

Plaintiff's Complaint, or in the Alternative, for Summary Judgment (DE# 73, 7/25/17),

which is the subject of the Mandate and is presently before the Court on remand.

On November 7, 2017, the plaintiff filed the Plaintiff's Motion to Exceed Page

Limit (DE# 88, 11/8/17) and attached as Exhibit 1 the Plaintiff's Response to

Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (DE# 88-1,

11/8/17). The Court granted the Plaintiff's Motion for Leave to File Excess Pages in a

Paperless Order (DE# 89, 11/9/17).

On November 14, 2017, the plaintiff filed the following: (1) the Declaration of Harvey R. Johnson (DE# 92, 11/15/17); (2) the plaintiff's Motion for Leave to Supplement (DE# 93, 11/15/17); and (3) the plaintiff's Motion for Summary Judgment (DE# 94, 11/15/17).

On March 3, 2018, the Court granted in part and denied in part the Defendants' Motion to Dismiss. (DE# 100, 3/8/18). In the March 3, 2018 Order, the Court dismissed with prejudice as time-barred the plaintiff's claims against the defendants Cook and Nicholson based on allegation that they intentionally mishandled the plaintiff's property while he was in the Special Housing Unit ("SHU"). Id. at 20. The Court also entered partial summary judgment in favor of the defendant Roy on the plaintiff's claim that Roy transferred the plaintiff to protect the warden and that the plaintiff's placement in the SHU was bogus. Id. As a result, the following First Amendment retaliation claims remained pending:

• the defendants Burden and Oramas attempted to intimidate the plaintiff and threatened to institute outside charges unless the plaintiff dropped his grievance against the defendant Cooke (Complaint at 25);

• the defendant Freehill stated that the plaintiff is "like a fly who won't go away," referring to the grievances the plaintiff filed, and denied him his blood pressure medication, stating that the plaintiff would not succeed in suing him (Complaint at 31-32, 53-54);

• the defendant Andrews said the plaintiff "need[s] to die" because he wrote people up and said "I got something for you," followed by a short time later with the plaintiff's placement in SHU (Complaint at 49); and

6

•     the defendants Burden, Andrews, Nicholson, Garcia, Donaldson, Oramas, Barnes, Posada, Hanna, and Bearden retaliated against the plaintiff by submitting him for transfer after falsifying an SIS investigation and threat assessment and the 409 form which was used to submit for the transfer, all because the plaintiff invoked his right to filing grievances against Bureau of Prisons ("BOP") staff (Complaint at 34).

Additionally, the Court denied the plaintiff's motion for summary judgment.

On May 4, 2018, the remaining individual defendants[3] filed the Defendants' Notice of Interlocutory Appeal (DE# 116, 5/4/18) in the Eleventh Circuit regarding the Court's March 18, 2018 Order denying the defendants' qualified immunity and summary judgment on the remaining claims against them (DE# 100, 3/18/18).

The Eleventh Circuit issued it's judgment as the Mandate of the court. Mandate (DE# 124, 9/5/19).  The Eleventh Circuit remanded the matter to the Court "to reconsider its ruling on the Defendants' motion to dismiss or for summary judgment in light of *Abbasi*, and [the Eleventh Circuit] decline[d] to consider Defendants' qualified immunity argument."  Id. at 10.

The plaintiff's Motion to Take Judicial Notice (DE# 126, 5/5/20) asking the Court to take judicial notice of the Supreme Court's recent decision in Hernandez v. Mesa, 140 S. Ct. 735  (2020), and the plaintiff's Motion to Supplement (DE# 127, 5/5/20) were granted by the Court (DE# 128, 5/19/20) "to the extent it shall consider the arguments

_____

[3]The remaining individual federal defendants, who are current and former BOP employees are: Cassandra Andrews, Nanette, Barnes, Lori Bearden, Kevin Burden, Christopher Donaldson, William Garcia, Charles Hanna, Antoninette Nicholson, William Oramas, Yima Posada, Bobby Roy and Rob Wilson.

when ruling on the pending defense motions."

On October 14, 2020, the subject motion was referred to the undersigned for a new Report and Recommendation.  (DE# 130, 10/14/20).  On October 16, 2020, the undersigned issued a Scheduling Order to afford the parties the opportunity to file memoranda of law to address the issues raised in the Eleventh Circuit's Mandate.  (DE# 131, 10/16/20).

On October 29, 2020, the plaintiff filed his Response to Court's Scheduling Order (DE# 132, 10/29/20).

On December 11, 2020, the defendants filed the Defendants' Memorandum of Law (DE# 135, 12/11/20).

The motion is ripe for disposition.

## ANALYSIS

I.     The Eleventh Circuit's Mandate

The defendants succeeded in part on their interlocutory appeal of this Court's denial of the defendants' motion to dismiss or alternative motion for summary judgment regarding the plaintiff's First Amendment retaliation claims against them.  The crux of the defendants' argument is that the Court should not extend Bivens to the plaintiff's First Amendment retaliation claims and thus, such claims should be dismissed.

In their motion to dismiss or alternative motion for summary judgment, the defendants argue that the plaintiff's First Amendment claims are not implied under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Additionally, the defendants maintained that the Supreme Court has refused to recognize an implied damages remedy under the United States Constitution itself, i.e.

8

Bivens liability, outside the context of the three it previously recognized namely: 1) unreasonable search and seizure under the Fourth Amendment; 2) gender discrimination by an employee against a Congressman under the Fifth Amendment; and 3) cruel and unusual punishment under the Eighth Amendment.[4]  See Ziglar v. Abbasi, 137 S. Ct. 1843 (2017).  Bivens is well-settled law in its own context, that is unreasonable searches and seizures under the Fourth Amendment, but "the [Supreme] Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Id. at 1857 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S. Ct. 1937 (2009)). "[F]or almost 40 years, [the Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under Bivens." Hernandez v. Mesa, 140 S. Ct. 735, 742 (2017)[5] (refusing to extend Bivens and affirming the dismissal of the parents' Fourth and Fifth Amendment claims based on the cross-border shooting of their minor son in Mexico by a United States Border Patrol agent)(citations omitted).

In the present case, the Eleventh Circuit agreed with the defendants' argument

---

[4]Bivens held an implied damages remedy against federal officials for violating the individual's Fourth Amendment's protection against unreasonable searches and seizures resulting from the warrant-less arrest and handcuffing of a man in his own home by FBI. Bivens, 403 U.S. at 388. "The Supreme Court has extended Bivens twice." Hernandez v. Mesa, 140 S. Ct. 735, 755 (2017) (citing Davis v. Passman, 442 U.S. 228, 99 S. Ct. 2264 (1979) (sex-discrimination claim against a congressman for firing his female secretary in violation of the Fifth Amendment's Due Process Clause); and Carlson v. Green, 446 U.S. 14, 100 S. Ct. 1468 (1980) (inadequate medical treatment claim against federal prison officials as violating the proscription against cruel and unusual punishment under the Eighth Amendment).

[5]The Supreme Court decided Hernandez after the Eleventh Circuit issued its Mandate in the present case. This Court granted the plaintiff's request for the Court to take judicial notice of the Hernandez decision.(DE# 128, 5/19/20). The plaintiff's reliance on Hernandez is misplaced. Hernandez supports the defendants' position that Bivens should not be extended to the plaintiff's First Amendment retaliation claims.

on appeal that the Court erred by relying on <u>Hartman v. Moore</u>, 547 U.S. 250 (2006) and extending a <u>Bivens</u> remedy to the plaintiff's First Amendment retaliation claims. <u>See</u> Mandate at 8 (DE# 124, 9/5/19).  A First Amendment retaliation claim was not one of the three constitutional claims previously recognized.[6] <u>Id</u>. at 8-9 (DE# 124, 9/5/19).[7]

    In <u>Abbasi</u>, the Supreme Court explained that "[i]f the case is different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme] Court, then the context is new."  <u>Abbasi</u>, 137 S. Ct. at 1859.  Where, as here, the claims constitute a new <u>Bivens</u> context, then the Court must proceed to the second step, the special factors analysis, which  requires the court to ask whether there are "special factors counselling hesitation [to extend <u>Bivens</u> relief] in the absence of affirmative action by  Congress." <u>Bivens</u>, 403 U.S. at 396; <u>Abbasi</u>, 137 S. Ct. at 1857; <u>Hernandez</u>, 140 S. Ct. at 743.

    In the present case, the Eleventh Circuit explained that "[t]he Supreme Court's post-<u>Hartman</u> cases[8] indicate that First Amendment claims, like Johnson's [retaliation claims] here, represent a new <u>Bivens</u> context." Mandate at 10 (DE# 124, 9/5/19).

---

    [6]The Eleventh Circuit explained that following <u>Hartman v. Moore</u>, 547 U.S. 250 (2006), "the Supreme Court has repeatedly confirmed that it has not extended a *Bivens* remedy to First Amendment claims." <u>See</u> Mandate at 10 (DE# 124, 9/5/19) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009); <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4 (2012)).

    [7]The undersigned's citation of pagination is to the page(s) set forth on this Court's docket (CM/ECF) rather than the appellate pagination or the actual pages of the Mandate and Judgment.

    [8]In the Mandate, the Eleventh Circuit explained that "[f]ollowing <u>Hartman</u>, the Supreme Court has repeatedly confirmed that it has not extended a <u>Bivens</u> remedy to First Amendment claims." Mandate at 10-11 (DE# 124, 9/5/19) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009); <u>Reichele v. Howards</u>, 566 U.S. 658, 663 n.4 (2012); and <u>Wood v. Moss</u>, 134 S. Ct. 2056, 2066 (2014)).

Pursuant to the Mandate, this Court must "apply a 'special factors' analysis consistent with Abbasi to determine whether expanding Bivens would be appropriate in Johnson's case."  Id. The Eleventh Circuit remanded the matter to "the district court to reconsider its ruling on the Defendants' motion to dismiss or for summary judgment in light of Abbasi...."  Id.

Pursuant to the Eleventh Circuit's Mandate, the undersigned will reconsider the defendants' motion to dismiss and alternative motion for summary judgment of the plaintiff's First Amendment retaliation claims as a new Bivens context in light of Abbasi. Id. at 10.

II.   "Special Factors" Analysis re: First Amendment Retaliation Claims

Central to the analysis of whether an implied cause of action exists under the Constitution are the separation of powers principles between Congress and the courts. Abbasi, 137 S. Ct. at 1857. "In most cases, the [Supreme] Court's precedents now instruct that Congress is in the better position to decide whether to authorize a damages action because 'Bivens will not be extended to a new context if there are '"special factors counselling hesitation in the absence of affirmative action by Congress"'". Id. (quoting Carlson v. Green, 446 U.S. 14, 18, 100 S. Ct. 1468, 1471 (1980) (quoting Bivens, 403 U.S. at 396, 91 S. Ct. at 2004)).

In Abbasi, the Supreme Court acknowledged that it "has not defined the phrase 'special factors counselling hesitation.'"  Id.  The Supreme Court explained

> [t]he necessary inference ... is that the inquiry must concentrate on
> whether the Judiciary is well suited, absent congressional action or
> instruction, to consider and weigh the costs and benefits of allowing a
> damages action to proceed. Thus, to be a "special factor counselling
> hesitation," a factor must cause a court to hesitate before answering that

11

question in the affirmative.

Abbasi, 137 S. Ct. at 1857-1858.  "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, courts must refrain from creating that kind of remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." Id.

In Hernandez v. Mesa, 140 S. Ct. 735  (2020), which was decided more than three years after Abbasi, the Supreme Court acknowledged that the Supreme Court "ha[s] not attempted to 'create an exhaustive list' of factors that may provide a reason not to extend Bivens, but [the Supreme Court] ha[s] explained that 'central to [this] analysis' are 'separation-of-powers principles.'" Hernandez, 140 S. Ct. at 743 (quoting Abbasi, 137 S. Ct. at 1857). The Supreme Court explained that a court should "consider the risk of interfering with the authority of other branches" and should ask whether "'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,'" and "'whether the Judiciary is well-suited, absent congressional action or instruction to consider and weigh the costs and benefits of allowing a damages action to proceed.'" Id. (quoting Abbasi, 137 S. Ct. at 1858).  In Abbasi, the Supreme Court found that "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide."  Abbasi, 137 S. Ct. at 1858.

Because the plaintiff's First Amendment retaliation claims represent a new Bivens context, the undersigned must ask whether factors exist that counsel hesitation in extending a damages claim to proceed.  The plaintiff's First Amendment retaliation claims that remained when the Court denied the defendants' motion to dismiss or

12

alternative motion for summary judgment can be broken down into three categories: (1) placement into the SHU (Complaint 25, 49); (2) refusal to assist the plaintiff with blood pressure medication that was delayed one day (Complaint at 31-32, 53-54); and (3) transfer to other prisons based on false information on SIS investigation forms (Complaint at 34, 57).

      A.    <u>Defendants' Arguments against Extending <i>Bivens</i> and for Dismissal</u>

Because the Supreme Court has refused to extend <u>Bivens</u> to First Amendment claims, the defendants argue that the Court should dismiss the plaintiff's First Amendment retaliation claims based on 1) the refusal to assist him with obtaining his blood pressure medication for a day; 2) housing him in the Solitary Housing Unit ("SHU"); and 3) transferring him to another prison. <u>See</u> Defendants' Memorandum of Law at 8 (DE# 135, 12/11/20) (post-Mandate); <u>see</u> <u>also</u> Defendants' Motion (DE# 73, 7/25/17); and Defendants' Objections to the Magistrate's Report and Recommendation on the Defendants' Motion to Dismiss Complaint or in the Alternative for Summary Judgment at 6 (DE# 98, 2/23/18) (citing <u>Reichle v. Howards</u>, 566 U.S. 658, 132 S. Ct. 2088, 2093 n.4 (2012) ("We have never held that <u>Bivens</u> extends to First Amendment claims.").

In <u>Bush v. Lucas</u>, 462 U.S. 367, 385-388 (1983), the Supreme Court refused to extend <u>Bivens</u> to a First Amendment speech claim by a federal employee who was demoted after giving statements to the press that were critical of NASA, finding available remedies under the Civil Service Commission regulations. In <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1948 (2009), the Supreme Court explained that since implied causes of action are disfavored, the Supreme Court has "declined to extend <u>Bivens</u> liability to a

13

claim sounding in the First Amendment." Id. The defendants contend that the proper balance is for Congress to determine whether to allow damages for First Amendment retaliation claims, not the Judiciary. See Defendant's Memorandum at 10-11; see also Defendants' Motion at 34.

           1.     Separation of Powers Concerns

The defendants maintain that significant separation of powers concerns counseling hesitation include: (1) the repeated legislative action in the arena of prison life without ever providing for a damage remedy; (2) the systemwide costs and burden on government imposed by the creation of a remedy, particularly for prison housing decisions; and (3) the harmful effects the creation of a remedy would have on the discharge of officials' duties in the prison administrative and disciplinary context. Defendants' Memorandum of Law at 10-11 (DE# 135, 12/11/20). Under Abbasi, courts should consider "special factors" in the "aggregate." Abbasi, 137 S. Ct. 1857-58, 1860-63; accord Chappell v. Wallace, 462 U.S. 296, 304 (1983) ("Taken together, the unique disciplinary structure of the military establishment and Congress' activity in the field constitute 'special factors.'").

           a.     Congress' Repeated Legislative Action regarding Prison Life without Creating a Damages Remedy

"[L]egislative action suggesting that Congress does not want a damage remedy itself is a factor counseling hesitation." Abbasi, 137 S. Ct. at 1858-59, 1865. The Supreme Court explained that "[s]ome 15 years after Carlson was decided, Congress passed the Prison Litigation Reform Act of 1995 ["PLRA"], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." Id. at 1865

(citing 42 U.S.C. § 1997e). "But [the PLRA] itself does not provide for a standalone damages remedy against federal jailers." Id. In Abbasi, the Supreme Court acknowledged that "[i]t could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prison mistreatment." Id.; see Skinner v. Switzer, 562 U.S. 521, 535 (2011) (Congress enacted PLRA to "place[ ] a series of controls on prisoner suits, constraints designed to prevent sportive filings in federal court.") (citations omitted). Statistics suggest that the PLRA "is already having its intended effect" of "discourag[ing] prisoners from filing claims that are unlikely to succeed." Id. (quoting Crawford-El v. Britton, 523 U.S. 574, 596-97 (1998)).

Additionally, the defendants argue that "Congress has consistently and expressly deferred to the Attorney General and BOP on how best to safeguard the welfare of inmates and manage day-to-day prison operations." Defendants' Memorandum of Law at 12 (DE# 135, 12/11/20) (citing 18 U.S.C. § 4042). Congress vested the BOP with exclusive authority to house inmates wherever it deems "appropriate and suitable" based on the nature of the inmate's offense and the types of facilities available. 18 U.S.C. § 3261(b). Congress has stripped courts of jurisdiction "to review certain decisions made by BOP officials" under the Administrative Procedures Act, 18 U.S.C. § 3625. See Brown v. Holder, 770 F. Supp. 2d 363, 365 (D.D.C. 2011) (dismissing the plaintiff's complaint due to lack of jurisdiction to review the BOP's actions). The defendants maintain that the assignment of an inmate to the SHU or his transfer to another facility are prison housing decisions that Congress has affirmatively determined are best determined by the BOP, not the courts. Defendants' Memorandum of Law at

15

12 (DE# 135, 12/11/20).  The undersigned agrees that Congress' active and repeated efforts to address prisoner rights with legislation without carving out any individual right for damages is a special factor that counsels hesitation in extending <u>Bivens</u> to the plaintiff's First Amendment retaliation claims based on his placement in the SHU and his transfer to another prison.  Accordingly, the undersigned recommends that the Defendants' motion to dismiss should be granted and the plaintiff's First Amendment retaliation claims based on his placement in the SHU and his transfer to other prisons should be dismissed.

> b.   <u>Impact of Expanding *Bivens* on Governmental Operations Systemwide</u>

The defendants argue further that before extending <u>Bivens</u>, the Court must determine whether the Court is in a better position than Congress to "consider and weigh the costs and benefits of allowing a damages action to proceed" in the absence of congressional action or instruction. <u>See</u>  Defendants' Memorandum of Law at 10 (DE# 135, 12/11/20); <u>see also</u> Defendants' Objections at 8 (DE# 98, 2/23/18)(citing <u>Abbasi</u>, 137 S. Ct. at 1858). The Supreme Court decisions require courts to assess the impact of an implied damages remedy on "governmental operations systemwide," including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself."  <u>Abbasi</u>, 137 S. Ct. at 1858.

The defendants contend that "[i]n the context of day-to-day operation of federal prisons, there are many 'sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy.'" <u>See</u> Defendants' Memorandum of Law at 10 (DE#

16

135, 12/10/20) (quoting Abbasi, 137 S. Ct. at 1865)).  The defendants argue further that

the fact that Congress has never authorized a damages action by federal prisoners and

particularly one for First Amendment retaliation despite acting extensively in the area

strongly supports a reason to believe that Congress "might" doubt the efficacy and

necessity of a damages remedy. Id. (quoting Abbasi, 137 S. Ct. at 1865). The

defendants maintain that courts must consider a "number of economic and

governmental concerns" before recognizing an implied cause of action. Id. (citing

Abbasi, 137 S. Ct. at 1855-56). Additionally, there are substantial costs associated with

defending an inmate's Bivens action for First Amendment retaliation against a federal

employee that should be weighed by Congress, not the courts. Id.

     In their Objections to the Report and Recommendation, the defendants rely on

Alvarez v. U.S. Immigration and Customs Enforcement, 818 F.3d 1194 (11th Cir. 2016)

to support their position that the plaintiff's First Amendment retaliation claims raise a

special factor that counsels against extending Bivens because such claims "would be

doctrinally novel and difficult to administer." Alvarez, 818 F.3d at 1210.  In Alvarez, the

plaintiff filed a Bivens action against government officials who lodged a detainer against

him and held him in custody for more than a year pending deportation.  In Alvarez, the

Eleventh Circuit explained that "[t]he lack of a clearly defined standard by which to judge

such claims, and the nature of the claim as based primarily on the credibility of each

party, would likely lead to widespread litigation." Id. at 1211.

     The defendants argue further that the plaintiffs' First Amendment retaliation

claims present the same problem.  A retaliation claim under Section 1983 requires a

plaintiff to submit evidence of the defendant's retaliatory animus, that is, that "the

defendant was subjectively motivated to [take action] against the plaintiff for exercising his First Amendment rights."  O'Bryant v. Finch, 637 F.3d 1207, 1219 (11th Cir. 2011) ( quoting Motton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)).

In the present case, the plaintiff alleges that the defendants retaliated against him because he filed grievances against the defendants.  The defendants argue that if this Court extends a Bivens remedy for First Amendment retaliation claims it would cause adverse effects including: the potential increase in inmates filing grievances against correctional officers and then claiming that any use of force by the officers resulted from retaliatory animus; increased inmate lawsuits would necessarily increase the government's litigation costs and burden the individual employees required to defend such claims; and additional litigation costs because retaliatory animus presents fact questions that are not readily resolved on summary judgment.  The defendants argue further that the "special factor counselling hesitation" threshold is low in that it only must "cause a court to hesitate before answering [the question of whether to imply a new Bivens remedy] in the affirmative."  Abbasi 137 S. Ct. at 1858.  The defendants argue that reasonable reasons exist for the Court to hesitate to extend Bivens in the First Amendment retaliation context, and thus, the plaintiffs' claims should be dismissed. Defendants' Objection at 9 (DE# 98, 2/23/18).  The undersigned agrees and recommends that the Court grant the defendants' motion to dismiss the plaintiff's First Amendment retaliation claims against them.

2.    Alternative Remedy

The defendants argue that a court may refuse to extend Bivens where an alternative remedy is available. Defendants' Motion at 33; Defendants' Objections at 7

(DE# 98, 2/23/18); <u>Abbasi</u>, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new <u>Bivens</u> cause of action."); <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." (Citation omitted). The defendants argue that the plaintiff pursued administrative remedies for his grievances based on prison staff conduct including retaliation for filing grievances. <u>See</u> Motion to Dismiss, Ex. A (DE# 73-1).  The BOP's Administrative Remedy Program ("ARP") is one alternative, existing process that was available to the plaintiff.  In <u>Bush v. Lucas</u>, the Supreme Court explained that "noting that existing remedies do not provide complete relief for the plaintiff" does not answer the question of whether <u>Bivens</u> should be extended to create a damage remedy for federal employees who claim violations of their First Amendment rights.  <u>Bush v. Lucas</u>, 462 U.S. 367, 388 (1983). The defendants maintain that the existence of such alternative remedy supports their position that this Court should not extend <u>Bivens</u>.

In his Response, the plaintiff argues that the  ARP cannot constitute an alternative remedy when an inmate has no constitutionally protected right to access that procedure. <u>Cf.</u> 28 C.F.R. § 542.10 (2001) (The ARP provides "a process through which inmates may seek formal review of an issue which relates to any aspect of his/her own confinement."). Although the plaintiff may not have been satisfied with the outcome of the grievance procedure, the Supreme Court has held that such a remedial process is adequate  "so long as it provides an avenue for some redress." <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 69 (2001); <u>see</u> <u>Bush</u>, 462 U.S. at 388.

19

The undersigned finds that the ARP provides inmates with an alternative remedy that counsels against extending Bivens to the plaintiff's First Amendment retaliation claims. See Abbasi, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action."); see also Bush, 462 U.S. at 385-388 (acknowledging that civil-service regulations provided alternative relief process).. Thus, the undersigned recommends that the Court should grant the defendants' motion and dismiss the plaintiff's First Amendment retaliation claims.

   B.   Plaintiff's Responses in Opposition to Defendants' Motion to Dismiss

 In the plaintiff's Response to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (DE# 88-1, 11/8/17), the plaintiff explains that his First Amendment retaliation claim regarding the delay in obtaining his blood pressure medication while placed in SHU is that "once Freehill was made aware of the medication issue, knowing the potential harm exist[s], [Freehill] intentionally refused to assist plaintiff in receiving the medication ... due to filing grievances." Response at 25 (DE# 88-1, 11/8/17). The plaintiff concedes that he is "clearly aware Freehill can not provide the medication." Id. The plaintiff received the medication approximately 25.5 hours later. Id.

In his Response to Court's Scheduling Order (DE# 132, 10/29/20), the plaintiff relies on his previously filed Motion to Supplement (DE# 127, 5/4/20) and Motion to Take Judicial Notice (DE# 126, 5/5/20), both of which were granted by this Court (DE# 128, 5/19/20), to serve as his post-Mandate memorandum of law. The plaintiff requested the Court to take judicial notice of Hernandez v. Mesa, 140 S. Ct. 735 (2020),

which was decided after the Eleventh Circuit issued the Mandate in this case.  The

plaintiff argues that none of the factors justifying refusal to extend Bivens in Hernandez

exist in the present case. The plaintiff specifically references the Supreme Court's

reliance on Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006) to explain that "Congress

has repeatedly declined to authorize the award of damages for injury inflicted outside

our borders."  Hernandez, 140 S. Ct. at 747.  In Hernandez, the Supreme Court

explained:

> A leading example is 42 U.S.C. § 1983, which permits the recovery of
> damages for constitutional violations of officers acting under color of *state*
> law.  We have described Bivens as a "more limited" "federal analog" to §
> 1983.  Hartman v. Moore, 547 U.S. 250, 254 n.2, ... (2006). It is therefore
> instructive that Congress chose to make § 1983 available only to
> "citizen[s] of the United States or other person[s] within the jurisdiction
> thereof."  It would be "anomalous to impute ... a judicially implied cause of
> action beyond the bounds [Congress has] delineated for [a] comparable
> express caus[e] of action." Blue Chip Stamps v. Manor Drug Stores, 421
> U.S. 723 ... (1975). Thus, the limited scope of § 1983 weighs against
> recognition of the Bivens claim at issue here.

Hernandez, 140 S. Ct. at 747.  Hernandez involved a claim against a U.S. Border Patrol

agent by the parents of a teenage boy who was shot and killed in a cross-border

shooting.  The plaintiff's reliance on Hernandez is misplaced.  Hernandez is factually

distinguishable and does not support the plaintiff's argument that the Supreme Court

"accepts the expansion [of Bivens] to the First Amendment and expects Bivens to be

treated as a 'Federal Analogy' [sic] to 42 U.S.C. § 1983, which deals with the violating of

a U.S. citizen['s] constitutional rights within the United States." Motion to Take Judicial

Notice at 2 (DE# 126, 5/5/20).  The plaintiff's argument lacks merit.  Section 1983 does

not apply to a federal inmates' constitutional claims and federal officers.  Additionally, in

his Response, the plaintiff argues that he has no alternative remedy.

21

In the plaintiff's Motion to Supplement (DE# 127, 5/5/20), the plaintiff argues that Abbasi and Hartman support his position that in the present case "courts" is the answer to the question of who should decide whether to extend Bivens. Id. at 2.  The plaintiff relies on Carlson v. Green, 446 U.S. 14 (1980), wherein the Court extended Bivens to "a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." Motion to Supplement at 3 (DE# 127, 5/5/20). The plaintiff contends that the constitutional provision is the only difference between his case and Carlson. Unlike the present case, in Carlson, the mother of the deceased  inmate sought damages against the director of the federal Bureau of Prisons for a violation of the Eighth Amendment's proscription against cruel and unusual punishment. Carlson is factually and legallly distinguishable.[9] Carlson was decided at a time when the Supreme Court was more amenable to extending Bivens and well before the Supreme Court held that extending Bivens is now a "'disfavored' judicial activity." Abbasi, 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675).  Carlson involved the death of an inmate who was a chronic asthmatic due to medically indifferent acts and omissions of federal prison authorities.

---

[9] In Carlson, despite knowing the "gross inadequacy of medical facilities and staff at the [prison] and of the seriousness of [the inmate's] chronic asthmatic condition, ... [the defendants] kept him in that facility against the advice of doctors, failed to give him medical attention for ... eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital.  The complaint further alleges that [the inmate's] death resulted from these acts and omissions, that petitioners were deliberately indifferent to [his] serious medical needs, that their indifference was in part attributable to racial prejudice." Carlson, 446 U.S. at 54, n.1.

## **RECOMMENDATION**

In accordance with the foregoing, the undersigned respectfully recommends that the Defendants' Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment (DE# 73, 7/25/17) should be GRANTED and the First Amendment retaliation claims against the remaining fifteen defendants should be DISMISSED.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

``      RESPECTFULLY SUBMITTED at the United States Courthouse in Miami, Florida, this  27th  day of January, 2021.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE