## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21790-CIV-LENARD

**HARVEY R. JOHNSON,**

      Plaintiff,

**v.**

**OFFICER JASON COOKE, et al.,**

      Defendants.

_____/

## ORDER ADOPTING AND SUPPLEMENTING REPORT AND RECOMMENDATION (D.E. 139), AND DISMISSING COMPLAINT

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge John J. O'Sullivan issued January 27, 2021, ("Report," D.E. 139), recommending that the Court grant Defendants' Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment, (D.E. 73), and dismiss Plaintiff's remaining claims. Plaintiff Harvey R. Johnson filed Objections to the Report on or about March 26, 2021, ("Objections," D.E. 145), to which Defendants did not respond. On April 15, 2021, Plaintiff filed a Motion to Supplement, (D.E. 147), which the Court granted on May 3, 2021, (D.E. 148). Upon review of the Report, Objections, supplemental materials, and the record, the Court finds as follows.

### I.  Background

Plaintiff is currently a federal inmate under the supervision of the Residential Reentry Management field office in Orlando, Florida. On April 30, 2015, Plaintiff filed a

ninety-one page civil rights complaint pursuant to <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), which contains allegations that pertain to events occurring at the Federal Correctional Institution in Miami ("FCI Miami") and Federal Correctional Institution Coleman Low ("Coleman Low").  (<u>See</u> <u>id.</u> at 9-59.)[1]  The Complaint contains fifty-two counts against eighty-two individuals, including officers, pharmacists, administrators, attorneys, and others.  (<u>See</u> <u>id.</u> at 5-8, 60-88.)  The claims stem from a December 23, 2010 cell inspection during which Officer Jason Cooke allegedly confiscated a bowl without completing the required procedure and ransacked Plaintiff's cell.  (<u>Id.</u> ¶¶ 1-6.)  Plaintiff complained about the incident and followed up with grievances which, he claims, resulted in multiple instances of retaliation over the following two years.  (<u>Id.</u> ¶¶ 7-546.)

On July 18, 2016, following a preliminary screening and Report and Recommendation, the Court entered an Order dismissing most of the claims contained in the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. ("Preliminary Dismissal Order," D.E. 22.)  However, the Court permitted some First Amendment retaliation claims to go forward.  (<u>See</u> <u>id.</u> at 34.)  The Court provided Plaintiff thirty days to file an amended complaint to cure the deficiencies in the original Complaint, (<u>id.</u>), and subsequently granted Plaintiff additional time to amend the complaint, (D.E. 33), but Plaintiff never filed an amended complaint.

---

[1]     When citing to page numbers within Plaintiff's Complaint, the Court will use the page numbers automatically generated by the Court's CMECF electronic filing system, not the page numbers assigned by Plaintiff.

On July 25, 2017, Defendants filed the instant Motion to Dismiss, or in the Alternative, for Summary Judgment. ("Motion," D.E. 73.) On November 7, 2017, Plaintiff filed a Motion to Exceed Page Limit (D.E. 88) and attached as Exhibit 1 a Response to Defendant's Motion, ("Response," D.E. 88-1). The Court granted the Motion to Exceed Page Limit. (D.E. 89.)

On November 14, 2017, Plaintiff filed: (1) the Declaration of Harvey R. Johnson, (D.E. 92); (2) a Motion for Leave to Supplement, (D.E. 93); and (3) a cross-Motion for Summary Judgment, (D.E. 94).

Former Magistrate Judge Patrick A. White issued a Report and Recommendation on the Parties' Motions. (D.E. 97.) Defendants filed Objections to the Report. (D.E. 98.)

On March 8, 2018, the Court entered an Order granting in part and denying in part Defendants' Motion, and denying Plaintiff's cross-Motion for Summary Judgment. (D.E. 100.) Relevant here, the Court rejected Defendants' argument that pursuant to Ziglar v. Abbasi, __ U.S. __, 137 S. Ct. 1843 (2017), there is no viable First Amendment retaliation claim under Bivens. (Id. at 9-12.) The Court also found that Defendants were not entitled to qualified immunity. (Id. at 12-14.) However, the Court granted Defendants summary judgment as to certain claims. (See id. at 8, 16, 18-19.) Three of Plaintiff's First Amendment retaliation claims survived the Court's March 8, 2018 Order.[2] The Court's

---

[2]     The three claims that survived the Court's March 8, 2018 Order are Plaintiff's claims that: (1) Defendants Burden and Oramas attempted to intimidate Plaintiff and threatened to institute outside charges unless he dropped his grievance against Defendant Cooke, (Compl. at 25); (2) Defendant Andrews said the Plaintiff "need[s] to die" because he wrote people up and said "I got something for you," followed a short time later with Plaintiff's placement in SHU, (id. at 49); and (3) Defendants Roy, Burden, Andrews, Nicholson, Garcia, Donaldson, Oramas, Barnes,

Order provided Defendants with fourteen days to file an Answer to the Complaint.  (Id. at 22.)

On March 12, 2018, after the Court issued its Order, the Clerk received and docketed Plaintiff's Objections to Judge White's Report.  (D.E. 104.)  Plaintiff subsequently filed a Motion requesting that the Court consider his objections.  (D.E. 111.)  Thereafter, Defendants' filed a Motion for Enlargement of Time to Respond to Complaint, stating that the Solicitor General's office was considering an interlocutory appeal of the Court's denial of qualified immunity and application of Abassi.  (D.E. 112.)  Judge White granted that Motion and provided Defendants until May 24, 2018 to respond to the Complaint or, alternatively, to appeal the Court's Order.  (D.E. 113.)  On April 19, 2018, the Court entered an Order staying Plaintiff's Motion requesting that the Court review his Objections pending the Solicitor General's decision regarding an interlocutory appeal.  (D.E. 115.)

On May 4, 2018, Defendants filed a Notice of Interlocutory Appeal, (D.E. 116), and the Court entered an Order Staying and Administratively Closing the Case pending the resolution of Defendants' interlocutory appeal, (D.E. 117).

On September 4, 2019, the Eleventh Circuit issued its Mandate, finding that this Court erred in concluding that Bivens extends to First Amendment retaliation claims.  (D.E.

---

Posada, Hanna, and Bearden retaliated against Plaintiff by submitting him for transfer after falsifying an SIS investigation and threat assessment and the 409 form which was used to submit for the transfer, all because Plaintiff continually invoked his right to filing grievances against Bureau of Prisons ("BOP") staff, (id. at 57).

Judge O'Sullivan's Report incorrectly reflects that Plaintiff's claim against Defendant Lt. Freehill for denying Plaintiff his blood pressure medication survived the Court's March 8, 2018 Order.  (Report at 6.)  The Court granted Lt. Freehill summary judgment on that claim, (see D.E. 100 at 18-19), but inadvertently omitted that claim from the "Conclusion" section.

124 at 6.)  The Eleventh Circuit concluded that First Amendment claims, like Plaintiff's, "represent a new <u>Bivens</u> context" and, as such, this Court was "required to apply a 'special factors' analysis consistent with <u>Abbasi</u> to determine whether expanding <u>Bivens</u> would be appropriate in [this] case."  (<u>Id.</u> at 8.)  Thus, the Eleventh Circuit remanded to this court to reconsider its ruling on Defendants' Motion in light of <u>Abassi</u>.[3]

Following remand, the Court referred the case to Judge O'Sullivan for a new Report and Recommendation on Defendants' Motion consistent with the Eleventh Circuit's Mandate.  (D.E. 130.)

On May 4, 2020, Plaintiff filed a Motion to Take Judicial Notice of the Supreme Court's recent decision in <u>Hernandez v. Mesa</u>, __ U.S. __, 140 S. Ct. 735 (2020), (D.E. 126), and a Motion to Supplement, (D.E. 127).  The Court granted both of those Motions "to the extent it shall consider the arguments when ruling on the pending defense motions." (D.E. 128.)[4]

On October 16, 2020, Judge O'Sullivan issued a Scheduling Order to afford the Parties the opportunity to file memoranda of law to address the issues raised in the Eleventh Circuit's Mandate.  (D.E. 131.)  On October 29, 2020, Plaintiff filed a Response to the Court's Scheduling Order.  (D.E. 132.)  On December 11, 2020, Defendants filed a Memorandum of Law.  (D.E. 135.)

---

[3]     The Eleventh Circuit declined to consider Defendants' qualified immunity argument.  (Mandate at 10.)

[4]     Although the Court's Order only granted the Motion to Supplement, (<u>see</u> D.E. 128), the Motion to Supplement incorporated by reference the Motion for Judicial Notice, (D.E. 127 at 1).

On January 27, 2021, Judge O'Sullivan issued the instant Report, finding that "special factors" exist to not extend <u>Bivens</u> to Plaintiff's First Amendment retaliation claims.  (D.E. 139.)

On March 26, 2021, Plaintiff filed Objections.  (D.E. 145.)  On April 15, 2021, he filed a Motion to Supplement, (D.E. 147), to which he attached two exhibits, (D.E. 147-1). The first exhibit is an email from Plaintiff's mother, Yvonne Smith to Congressman Bill Posey, in which she asks: "why has congress written a statute pursuant to 42 USC 1983 for state inmates to have the ability to pursue constitutional violations against state officials, and has NOT written a statute for federal inmates to have the ability to pursue constitutional violations against federal officials?"  (D.E. 147-1 at 2.)  The second exhibit is a letter in response to Ms. Smith's email from Congressman Posey.  (D.E. 147-2 at 7.)  In the letter, Congressman Posey states that although "there is no specific statute addressing this right of a person to bring a lawsuit against a Federal employee who violates his constitutional rights, the Supreme Court has found that such a right may be derived from the U.S. Constitution.  Such lawsuits are called Bivens claims."  (<u>Id.</u>)  Congressman Posey's letter further states that "[t]he right to sue [under <u>Bivens</u>] applies to any constitutional right, not just the Fourth Amendment."  (<u>Id.</u>)

The Government did not respond to the Objections or the Motion to Supplement. On May 3, 2021, the Court granted the Motion to Supplement.  (D.E. 148.)

## II.      Legal Standards

### a.      Report and recommendations

Upon receipt of the Magistrate Judge's Report and Movant's Objections, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); accord Fed. R. Civ. P. 72(b)(3).   "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.   Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).   Those portions of a magistrate judge's report and recommendation to which no objection has been made are reviewed for clear error.   See Lombardo v. United States, 222 F. Supp. 2d 1367, 1369 (S.D. Fla. 2002); see also Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006) ("Most circuits agree that [i]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (internal quotation marks and citations omitted).   The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

### b.      Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).   "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").   In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference."  Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

Sinaltrainal v. Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by Mohamad v. Palestinian Auth., 566 U.S. 449, 132 S. Ct. 1702, 1706 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

### III.     Discussion

In <u>Bivens</u>, the Supreme Court recognized an implied cause of action for damages for persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures.   403 U.S. at 397.   The Supreme Court subsequently extended <u>Bivens</u> to a Fifth Amendment claim of gender discrimination, <u>Davis v. Passman</u>, 442 U.S. 228, 244 (1979), and to an Eighth Amendment claim of cruel and unusual punishment, <u>Carlson v. Green</u>, 446 U.S. 14, 20 (1980).

However, "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend <u>Bivens</u> liability 'to any new context or new category of defendants.'" <u>Iqbal</u>, 534 U.S. at 68 (quoting <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001)).  In <u>Abassi</u>, the Court explained that "[i]f [a] case is different in a meaningful way from previous <u>Bivens</u> cases decided by this Court, then the context is new."[5]  137 S. Ct. at 159. According to <u>Abassi</u>, the only three "previous <u>Bivens</u> cases decided by [the Supreme] Court" are <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>.  <u>Id.</u> at 1855 ("These three cases—<u>Bivens</u>, <u>Davis</u>,

---

[5]     The Court provided examples of when a case might be different in a meaningful way from previous <u>Bivens</u> cases decided by the Supreme Court:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

<u>Id.</u> at 1860.

and <u>Carlson</u>—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

Here, the Eleventh Circuit's Mandate establishes that First Amendment retaliation claims, like those presented in this case, "represent a new <u>Bivens</u> context." (Mandate at 8.)  As such, this Court is "required to apply a 'special factors' analysis consistent with <u>Abassi</u> to determine whether expanding <u>Bivens</u> would be appropriate in [this] case." (<u>Id.</u>)

When faced with whether to extend <u>Bivens</u> to a new context, courts should: (1) determine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages[,]" <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007) (citing <u>Bush v. Lucas</u>, 462 U.S. 367, 378 (1983)); and if no alternative exists, (2) "'make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation[,]'" <u>id.</u> (quoting <u>Bush</u>, 462 U.S. at 378).  The Supreme Court

> has not defined the phrase "special factors counselling hesitation."  The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.  Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative.
>
> It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others.  It is true that, if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations.  Yet the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide.  Those matters include the burdens on Government employees who are sued personally, as well as

10

the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies. These and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case.

Sometimes there will be doubt because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere. See Chappell, supra, at 302, 103 S. Ct. 2362 (military); Stanley, supra, at 679, 107 S. Ct. 3054 (same); Meyer, supra, at 486, 114 S. Ct. 996 (public purse); Wilkie, supra, at 561–562, 127 S. Ct. 2588 (federal land). And sometimes there will be doubt because some other feature of a case—difficult to predict in advance—causes a court to pause before acting without express congressional authorization. In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

In a related way, if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action. For if Congress has created "any alternative, existing process for protecting the [injured party's] interest" that itself may "amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." Wilkie, supra, at 550, 127 S. Ct. 2588; see also Bush, supra, at 385–388, 103 S.Ct. 2404 (recognizing that civil-service regulations provided alternative means for relief); Malesko, 534 U.S., at 73–74, 122 S. Ct. 515 (recognizing that state tort law provided alternative means for relief); Minneci, supra, at 127–130, 132 S. Ct. 617 (same).

Abassi, 137 S. Ct. at 1857-58.

In this case, Judge O'Sullivan agreed with Defendants that that "reasonable reasons exist for the Court to hesitate to extend Bivens in the First Amendment retaliation context, and thus, the plaintiffs' claims should be dismissed." (Report at 18.) **First**, he found that separations of powers concerns counseled against extending Bivens. (Id. at 14-18.) In this

regard, Judge O'Sullivan: (1) found that "Congress' active and repeated efforts to address prisoner rights with legislation without carving out any individual right for damages is a special factor that counsels hesitation in extending <u>Bivens</u> to the plaintiff's First Amendment retaliation claims based on his placement in the SHU and his transfer to another prison[,]" (<u>id.</u> at 16); and (2) agreed with Defendants that extending a <u>Bivens</u> remedy to First Amendment retaliation claims would cause adverse effects, including:

> the potential increase in inmates filing grievances against correctional officers and then claiming that any use of force by the officers resulted from retaliatory animus; increased inmate lawsuits would necessarily increase the government's litigation costs and burden the individual employees required to defend such claims; and additional litigation costs because retaliatory animus presents fact questions that are not readily resolved on summary judgment.

(<u>Id.</u> at 18.)  As such, Judge O'Sullivan agreed with Defendants that Congress is in a better position than the Court "to 'consider and weigh the costs and benefits of allowing a damages action to proceed' in the absence of congressional action or instruction."  (<u>Id.</u> at 16 (quoting Defs.' Memo. of Law (D.E. 135) at 10).)  **Second**, Judge O'Sullivan found that BOP's Administrative Remedy Program ("ARP") "provides inmates with an alternative remedy that counsels against extending Bivens to the plaintiff's First Amendment retaliation claims."  (<u>Id.</u> at 20 (citing <u>Abassi</u>, 137 S. Ct. at 1858; <u>Bush</u>, 462 U.S. at 385-88).)  Accordingly, Judge O'Sullivan recommends dismissing Plaintiff's claims.  (<u>Id.</u> at 23.)

In his Objections, Plaintiff initially argues that Judge O'Sullivan failed to explain why separation of powers concerns counsel against extending <u>Bivens</u> to First Amendment retaliation claims.  (Obj. at 2.)  However, Judge O'Sullivan clearly and explicitly agreed

with Defendants' arguments that (1) "Congress' active and repeated efforts to address prisoner rights with legislation without carving out any individual right for damages is a special factor that counsels hesitation in extending <u>Bivens</u> to the plaintiff's First Amendment retaliation claims based on his placement in the SHU and his transfer to another prison[,]" (<u>id.</u> at 16); and (2) Congress is in a better position than the Court "to 'consider and weigh the costs and benefits of allowing a damages action to proceed' in the absence of congressional action or instruction." (<u>Id.</u> at 16 (quoting Defs.' Memo. of Law (D.E. 135) at 10); <u>see also</u> <u>id.</u> at 18 (agreeing with Defendants' separation of powers argument).)

Plaintiff further argues that Congress' active and repeated efforts to address prisoner rights with legislation without carving out any individual right for damages "cannot be considered a special factor that counsels hesitation in extending <u>Bivens</u> to the Plaintiff's First Amendment retaliation claims," (Obj. at 3), because: (1) he is not challenging BOP's policies of placing inmates in SHU and transferring inmates, but rather he is challenging the reason why he was placed in SHU and transferred, (<u>id.</u> at 4); and (2) the case upon which Defendants rely, <u>Brown v. Holder</u>, 770 F. Supp. 2d 363, 365 (D.D.C. 2011), is distinguishable from this case, (<u>id.</u> at 5-6).  He further argues that the impact of expanding <u>Bivens</u> on governmental operations systemwide should not be considered a special factor counseling against extending <u>Bivens</u> because the case upon which Defendants rely, <u>Alvarez v. U.S. Immigration and Customs Enforcement</u>, 818 F.3d 1194 (11th Cir. 2016), is distinguishable.  (<u>Id.</u> at 6-8.)  He further argues that extending <u>Bivens</u> would not result in the "adverse effects" identified by Defendants and Judge O'Sullivan.  (<u>Id.</u> at 9-12.)

13

Finally, in his Motion to Supplement, Plaintiff appears to argue that Congressman Posey's letter to Plaintiff's mother demonstrates that no separation of powers issue exists.  (See Mot. to Supplement, D.E. 147 at 2 (arguing that Congressman Posey's letter "reveals Congress is under the presumption" that <u>Bivens</u> provides federal inmates with a right to sue government officers for constitutional violations).)

The problem with Plaintiff's arguments is that almost every court (if not every court) to have decided this issue has found that separation of powers concerns counsel against extending <u>Bivens</u> to First Amendment retaliation claims in the prison context.  <u>See, e.g.</u>, <u>Mack v. Yost</u>, 968 F.3d 311, 323 (3d Cir. 2020); <u>Pinson v. U.S. Dep't of Justice</u>, __ F. Supp. 3d __, 2021 WL 790380, at *6 (D.D.C. 2021); <u>Green v. United States</u>, Civil Action No. 6:19-cv-00024-GFVT, 2021 WL 1214499, at *9 (E.D. Ky. Mar. 30, 2021); <u>Daniels v. Fed. Bureau of Prisons</u>, No. ED CV 19-719-FMO (PLA), 2019 WL 1959255, at *4 (C.D. Cal. May 2, 2019); <u>Atkinson v. Broe</u>, 15-cv-386-wmc, 2019 WL 231754, at *5-6 (W.D. Wisc. Jan. 16, 2019); <u>see also</u> <u>Bistrian v. Levi</u>, 912 F.3d 79, 96 (3d Cir. 2018) (finding that separation of powers concerns counseled against extending <u>Bivens</u> to First Amendment retaliation claim brought by pretrial detainee).  Upon de novo review, the Court agrees with these cases, adopts their analyses, and finds that separation of powers concerns counsel against extending <u>Bivens</u> to First Amendment retaliation claims.

Next, Plaintiff objects to Judge O'Sullivan's finding that BOP's Administrative Remedy Program, 28 C.F.R. 542.10, provides inmates with an adequate alternative remedy that counsels against extending Bivens to Plaintiff's First Amendment retaliation claims. (Obj. at 13.)   Initially, he argues that the Supreme Court has observed only that an

alternative remedy "may" counsel against extending a <u>Bivens</u> remedy, not that it "must" or "shall."  (Obj. at 13.)   Regardless, he argues that the ARP cannot be considered an alternative remedial structure because it cannot provide him redress for past conduct that violated his constitutional rights.  (<u>Id.</u> at 13-14.)   He attempts to distinguish the cases Defendants and Judge O'Sullivan cite, <u>Malesko</u>, 534 U.S. at 69, and <u>Bush</u>, 462 U.S. at 388. (<u>Id.</u> at 14-15.)   He further argues that Judge O'Sullivan failed to address arguments he made regarding why the ARP cannot and should not be considered an alternative remedy, including the fact that an inmate has no constitutionally protected liberty interest in access to the procedure.  (<u>Id.</u> at 17-18 (citing D.E. 132 at 2-3 (citing D.E. 22 at 15-16) (quoting <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1177 (11th Cir. 2011))).)  He argues that although the ARP provides a process through which an inmate may seek formal review of an issue which relates to any aspect of his own confinement, "what the ARP provides, or is meant to provide, and what a prisoner (Plaintiff) is being provided access to, is totally different." (Obj. at 18.)   He then discusses exhibits attached to his Objection that allegedly demonstrate that he is being denied access to the ARP, and argues that it should therefore not be considered an adequate alternative remedy.  (<u>Id.</u> at 18-24.)

However, the evidence Plaintiff provides of allegedly being denied access to the ARP involves events that occurred long after the allegations contained in the Complaint.[6] Specifically, the Complaint contains allegations regarding events that occurred between

---

[6]     The Court considers the evidence solely to the extent that it is relevant to the <u>Abassi</u> analysis for determining whether to extend <u>Bivens</u> to Plaintiff's First Amendment retaliation claims.

December 23, 2010 and November 28, 2012.  (<u>See</u> Compl. at 9-59.)  Plaintiff filed his Complaint on or about April 30, 2015.  (D.E. 1.)  The exhibits attached to Plaintiff's Objections consist of correspondence between Plaintiff and prison officials regarding denial of access to the ARP between October 3, 2016 and October 25, 2017.  (Obj. at 30-57.)  Thus, even assuming <u>arguendo</u> that the exhibits actually demonstrate that Plaintiff has been denied access to the ARP—and it is not clear that they do—the exhibits do not demonstrate that he was denied access to the ARP with regard to the First Amendment retaliation claims at issue in this case.

On the other hand, Defendants have filed Plaintiff's administrative remedy history that reflects that Plaintiff submitted 373 administrative remedy requests between May 2, 2007 and May 24, 2015—including 187 requests during the relevant period from January 11, 2011 through November 30, 2012.[7]  (D.E. 73-1.)  As Judge O'Sullivan observed, "[a]lthough the plaintiff may not have been satisfied with the outcome of the grievance procedure, the Supreme Court has held that such a remedial process is adequate 'so long as it provides an avenue for some redress.'"  (Report at 19 (citing <u>Malesko</u>, 534 U.S. at 69; <u>Bush</u>, 462 U.S. at 388).)  The Court finds that in this case, the ARP provided an adequate alternative remedy to a First Amendment relation claim under <u>Bivens</u>.  <u>See</u> <u>Earle v. Shreves</u>, 990 F.3d 774, 780 (4th Cir. 2021) (declining to extend <u>Bivens</u> to First Amendment retaliation claims because, inter alia: "Like all federal inmates, Earle has 'full access to

---

[7]     The Court considers the evidence solely to the extent that it is relevant to the <u>Abassi</u> analysis for determining whether to extend <u>Bivens</u> to Plaintiff's First Amendment retaliation claims.

remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program.'") (citing Malesko, 534 U.S. at 74); Vega v. United States, 881 F.3d 1146, 1154-55 & n.4 (9th Cir. 2018) (declining to extend Bivens to First Amendment retaliation claim because, inter alia, the plaintiff had an adequate alternative remedy under the ARP); Andrews v. Miner, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017) (same).

Consequently, the Court finds that it is not appropriate to extend the Bivens remedy to Plaintiff's First Amendment retaliation claims.  See Earle, 990 F.3d at 780-81; Mack, 968 F.3d at 320-25; Vega, 881 F.3d at 1154-55.  See also Pinkney v. Lockett, Case No. 5:16-cv-00103-Oc-02PRL, 2019 WL 1254851, at *7 (M.D. Fla. Mar. 19, 2019) ("[S]ince Abbasi, most courts have declined to extend the Bivens remedy to First Amendment claims.") (citing Atkinson, 2019 WL 231754, at *5 (collecting cases)); Free v. Peikar, CASE NO. 1:17-cv-00159-AWI-MJS (PC), 2018 WL 1569030, at *2 (E.D. Cal. Mar. 30, 2018) ("Nationwide, district courts seem to be in agreement that, post-Abbasi, prisoners have no right to bring a Bivens action for violation of the First Amendment.") (citing Muhhamad v. Gehrke, No. 2:15-cv-00334-WTL-MJD, 2018 WL 1334936, at *4 (S.D. Ind. Mar. 15, 2018); Leibelson v. Collins, CIVIL ACTION NO. 5:15-cv-12863, at *10-11 (S.D. W.V. Dec. 27, 2017); Andrews, 301 F. Supp. 3d at 1133-36)).

Plaintiff argues that a dismissal without prejudice is appropriate.  (Obj. at 2 (citing Harris v. Garner, 216 F.3d 970, 980 (11th Cir. 2000) (en banc)).)  Harris involved an interpretation of the Prison Litigation Reform Act ("PRLA"), which provided, in relevant part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or

17

other correctional facility, for mental or emotional injury suffered while in custody without

a prior showing of physical injury."  42 U.S.C. § 1997e(e) (2000).  The Eleventh Circuit

observed:

> Because section 1997e(e) applies only to claims filed while an inmate is
> confined, it does not prevent a former prisoner from filing after release
> a monetary damages claim for mental and emotional injury suffered while
> confined, without a prior showing of physical injury.  Accordingly, dismissal
> under this statutory provision of a claim that is filed during confinement
> should be without prejudice to re-filing the claim if and when the plaintiff is
> released.

Harris, 216 F.3d at 979-80 (citing Zehner v. Trigg, 952 F. Supp. 1318, 1335 (S.D. Ind.

1997)).

Here, however, Plaintiff's claims are brought pursuant to Bivens and not the PRLA.

Because the Court has found that Bivens does not provide a remedy for Plaintiff's First

Amendment retaliation claims, any amendment would be futile and the Complaint should

therefore be dismissed with prejudice.  See Negron v. United States, 19-cv-05442 (PMH),

2020 WL 5634304, at *10 (S.D.N.Y. Sept. 21, 2020) ("As to Plaintiff's Bivens claims, any

amendment would . . . be futile.  Absent a Supreme Court decision creating a new Bivens

remedy on all fours with Plaintiff's alleged Bivens Claims, Plaintiff's Bivens Claims

cannot survive a motion to dismiss.  Accordingly, . . . the Court dismisses Plaintiff's . . .

Bivens Claims with prejudice."); see also Canada v. United States, 950 F.3d 299, 305, 315

(5th Cir. 2020) (affirming dismissal with prejudice of "new Bivens context" claim where

special factors counseled against extending Bivens).

**IV.    Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      The Report and Recommendation of the Magistrate Judge (D.E. 139) is

        **ADOPTED** as supplemented herein;

2.      Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE**;

3.      All pending Motions are **DENIED AS MOOT**; and

4.      This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of May, 2021.

                                        _Joan A. Lenard_
                                        **JOAN A. LENARD**
                                        **UNITED STATES DISTRICT JUDGE**